## IN THE CIRCUIT COURT OF YAZOO COUNTY, MISSISSIPPI

**SHANE SMITH**                                                        **PLAINTIFF**

**VS.**                                                          **CAUSE NO.  2013-CI19**

**ANTLER INSANITY, LLC;**
**BYG OUTDOORS, LLC;**
**JOHN YOUNG;**
**SCOT GARLAND;**
**RANDY BUCKNER; AND**
**DARRIN HOLT**                                                    **DEFENDANTS**

### SUMMONS

**THE STATE OF MISSISSIPPI**
**YAZOO COUNTY**

TO:      J. DARRIN HOLT
         513 KAYWOODY CT.
         RALEIGH, NC 27615

### NOTICE TO DEFENDANT

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND
YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS.

**YOU ARE** required to mail or hand deliver a copy of written response to the Complaint

to David R. Lynch, the attorney for the Plaintiff, whose post office address is 4500 I-55 North,

Highland Village, Suite 241, Jackson, Mississippi 39211.  Your response must be mailed or

delivered within thirty (30) days from the date of delivery of this summons and complaint or a

judgment by default will be entered against you for the money or other things demanded in the

Complaint.

**YOU MUST** also file the original of your response with the Clerk of this Court within a

reasonable time afterward.



EXHIBIT
**A**

**ISSUED** under my hand and the seal of said Court, this the ___7th___ day of June, 2013.

ROBERT COLEMAN,
YAZOO COUNTY CIRCUIT CLERK

BY: _____
Deputy Clerk

DAVID R. LYNCH, ESQ. (MSB# 102595)
THE LYNCH LAW FIRM, PLLC
4500 I-55 North, Suite 241
Jackson, Mississippi  39211
(601) 321-1991
ATTORNEY FOR THE DEFENDANTS

## IN THE CIRCUIT COURT OF YAZOO COUNTY, MISSISSIPPI

| | |
|---|---|
| SHANE SMITH | )               **PLAINTIFF** |
| | ) |
| VS. | )    **CAUSE NO.:** $\mathcal{2}0/3 - CI/9$ |
| | ) |
| ANTLER INSANITY, LLC; | ) |
| BYG OUTDOORS, LLC; | ) |
| JOHN YOUNG; | ) |
| SCOT GARLAND; | ) |
| RANDY BUCKNER; AND | ) |
| DARRIN HOLT | )        **DEFENDANTS** |

## COMPLAINT

Comes Now, Shane Smith, in the above-styled and numbered cause, by and through his attorney of record, and file this his Complaint against the defendants, Antler Insanity, LLC, BYG Outdoors, LLC, John Young, Scot Garland, Randy Buckner, and Darrin Holt, and in support thereof, would respectfully show unto the Court the following facts, to-wit:

### Parties

1.      The plaintiff, Shane Smith, whose address is 496 Witherspoon Road, Yazoo City, Mississippi, is an adult, resident citizen of Yazoo County, Mississippi.

2.      The defendant, Antler Insanity, LLC is a non-resident limited liability corporation organized under the laws of the State of North Carolina and has its principal place of business at 175 Jehovah Jirah Road, Green Mountain, North Carolina 28740.

3.      The defendant, BYG Outdoors, LLC is a non-resident limited liability corporation organized under the laws of the State of North Carolina and has its principal place of business at 770 Fox Creek Road, Mars Hill, North Carolina 28754.

**F I L E D**
ROBERT COLEMAN, CIRCUIT CLERK

MAY 3 1 2013

BY _____ D.C.

4.    The defendant, John Young, whose address is unknown at this time, is an adult resident citizen of North Carolina.

5.    The defendant, Scot Garland, whose address is 175 Jehovah Jirah Road, Green Mountain, North Carolina, is an adult resident citizen of North Carolina.

6.    The defendant, Randy Buckner, whose address is 770 Fox Creek Road, Mars Hill, North Carolina 28754, is an adult resident citizen of North Carolina

7.    The defendant, Darrin Holt, whose address is unknown at this time, is an adult resident citizen of North Carolina.

## Jurisdiction

8.    This Court has jurisdiction of the subject matter of this action pursuant to the provisions of M.C.A. § 91-7-81 (1972) in that the principal of the amount in controversy exceeds Three Thousand Five Hundred Dollars ($3,500.00), the minimum jurisdictional limits of the Circuit Courts of the State of Mississippi.

9.    This Court has in personam jurisdiction of the defendants pursuant to M.C.A. § 13-3-57 in that they made a contract with a resident of the State of Mississippi to be performed in whole or in part by the Plaintiff in the State of Mississippi, and the defendants committed a tort in whole or in part in the State of Mississippi against the Plaintiff, and conducted business and performed work the State of Mississippi.

## Venue

10.    This Court has venue of this action pursuant to the provisions of M.C.A. § 11-11-3 (1972) in that the plaintiff's claim for relief against the defendants occurred and/or accrued in the Judicial District of Yazoo County, Mississippi.

## Underlying Facts

11.    Plaintiff commenced working with the Defendants on or about May 1, 2011.

12.    After commencing work with Defendants, Plaintiff and Defendants attempted to negotiate a contract for Plaintiff to be compensated for his work for Defendants.

13.    Plaintiff and Defendants agreed to a contract substantially similar to the contract attached hereto as Exhibit A (the "Agreement").

14.    Plaintiff has repeatedly requested and been denied an executed copy of the Agreement.

15.    Defendants have maintained through recent correspondence to Plaintiff, that Plaintiff was an employee of the Defendants. [See Exhibit B]

16.    The Agreement was a non-exclusive agreement allowing Plaintiff to do work for other companies and himself during the term of the Agreement.

17.    Plaintiff, at all times during his employ with the Defendants, satisfied the terms of the Agreement.

18.    As a term of the agreement, Plaintiff agreed to perform work for the Defendants with all expenses to be paid by them. [See Exhibit A]

19.    Plaintiff submitted a detailed expense reimbursement request on or about April 7, 2012. [See Exhibit C]

20.    Plaintiff was unilaterally terminated by Defendants without cause on April 30, 2012.

21.    By and through counsel, Defendants sent correspondence to Plaintiff on or about July 2, 2012, partially approving Defendants reimbursement request, but denying part of the reimbursement until additional documentation could be provided by Plaintiff. [See Exhibit D]

22.     By and through counsel, Plaintiff either provided the requested additional documentation to Defendants or provided explanation as to why such documentation was not necessary via letter dated, September 11, 2012. [See Exhibit E]

23.     To date, Plaintiff has not received any further response from Defendants regarding the correspondence sent on or about September 11, 2012.

24.     To date, Defendants have not reimbursed Plaintiff for the expenses he incurred while working for the Defendants.

25.     As a result of Defendants failure to either respond to Plaintiff's September 11, 2012, correspondence or provide Defendant reimbursement for the expenses he incurred, Plaintiff must assume his reimbursement request has been denied.

26.     Further, as a term of the agreement, Plaintiff agreed to allow Defendants "full rights and privileges to the use of all video, images, likeness, and endorsements made by me on their behalf and during such time as [he] is working for them." [See Exhibit A]

27.     Inclusion of the agreement term in Paragraph 18 was intended to protect Defendant's rights to the video and images produced by him in the event he was ever terminated by the Defendants.

28.     Inclusion of the agreement term in Paragraph 18 was intended to protect Defendant's rights and ability to use his own name and likeness for business purposes in the event he was ever terminated by the Defendants.

29.     Since Plaintiff's termination by Defendants and up to the date of the filing of this Complaint, Defendants have used videos and images produced by Plaintiff in numerous productions produced by Defendants and airing on national television.

30.     Defendants have financially benefitted by the use of the videos and images produced by the Plaintiff to the financial detriment of the Plaintiff.

31.     Since Plaintiff's termination by Defendants and up to the date of the filing of this Complaint, Defendants have used Plaintiff's likeness in productions produced by Defendants and airing on national television.

32.     Defendants have financially benefitted by the use of the likeness of the Plaintiff to the financial detriment of the Plaintiff.

33.     Since Plaintiff's termination by Defendants and up to the date of the filing of this Complaint, Defendants have further sought to intentionally disparage the Plaintiff to others in the outdoor television industry.

34.     The actions alleged in Paragraph 33 were made with the intention to prevent Plaintiff from being able to procure employment with competitors of the Defendant.

35.     The actions alleged in Paragraph 33 financially benefitted the Defendants to the financial detriment of the Plaintiff.

## Causes of Action

36.     The conduct of defendants herein constitutes breach of contract.

37.     The conduct of defendants herein caused emotional distress to the plaintiff negligently, and/or intentionally.

38.     The conduct of defendants herein constitutes the tort of defamation of character.

39.     The conduct of defendants herein constitutes the tort of tortious interference with business relations.

### Causation and Damages

40.     By reason of the defendants denial to reimburse the plaintiff for his expenses incurred, Shane Smith has suffered actual financial damages in the amount of the actual expenses incurred, the lost interest thereon, and expenses incurred to collect such amounts.

41.     By reason of the defendants use of plaintiff's personal videos, plaintiff became unable to use and/or sell such videos causing financial damages to the plaintiff.

42.     By reason of the publication and circulation of the aforementioned statements, Shane Smith was injured in his reputation and good name as a person, citizen, and in business reputation.

43.     By reason of the publication and circulation of the aforementioned statements, Shane Smith was caused to suffer humiliation, emotional upset, embarrassment, and physical and mental pain and anguish.

44.     As a direct and proximate cause of the aforesaid publication, Shane Smith, in an attempt to mitigate the damage wrought on him by said publication, was caused to expend time and money in defending his good name.

45.     As a direct and proximate cause of the aforesaid contacts to others in the industry of outdoors television, Shane Smith was prevented from pursuing other opportunities in the industry causing lost opportunity damages to Shane Smith.

46.     The actions and omissions of the defendants as described above were intended with malice and/or with such willful and wanton disregard of the rights of Shane Smith and/or were the result of a reckless disregard for such rights and thereby entitle Shane Smith to an award of punitive damages of and against the defendants for the purpose of punishing said

defendants for their egregious conduct and to set an example and deter said defendants and others similarly situated from and such conduct in the future.

## Ad Damum

WHEREFORE, Shane Smith, plaintiff, now brings this action against defendants and demand judgment against defendants as follows:

1.      Compensatory damages from defendants in an amount sufficient to reasonably compensate for the damages sustained by Shane Smith as a result of the actions of the defendants in an amount in excess of the minimum jurisdictional limits of the Circuit Courts of Mississippi;

2.      Punitive damages against the defendants in the amount of $75,000.00 or such other amount which would be sufficient to punish said defendants for their egregious conduct and to set an example and deter defendants and others similarly situated from such conduct in the future.

3.      Attorney fees and costs should be awarded to the Plaintiff.

4.      The total of all damages sought does not exceed $75,000.00.


Respectfully submitted, this the 29th day of May, 2013.


David R. Lynch, Esq.
The Lynch Law Firm, PLLC
4500 I-55 N, Ste. 241
Jackson, Mississippi 39211
Phone: 601-321-1991
Fax: 601-207-9017

By:     David R. Lynch

Attorney for Shane Smith

# Exhibit A

1st Daft From John Young

I Shane Smith do hereby contract with Antler Insanity and BYG Outdoors to offer services, personal digital images and video, endorsements and appearances under the following terms and conditions.

37,000.00 to be paid for services offered from April 1,2011 through January 31,2012

It is under stood that I will do contract work with Bone Collector and others during this period and this is a Non-Exclusive agreement. Antler Insanity will be first in line if ther are any schedule conflicts.

It is hereby agreed and understood that Antler Insanity , BYG Outdoors, there agints and assigns have full rights and privileges to the use of all video, imager, likeness and endorsements made by me on their behalf and during such time as I am working for them. Antler Insanity may advertise and publicize my affilation with them and my use my name and likeness in the endorsement of Antler Insanity products as long as the contract is in effect.

I herby agree to provide Antler Insanity

1) Video/Producer/Editor for Antler Insanity TV Show
2) 4 Personal appearances
3) personal endorsements
4) 1 video school
5) Minimum of 30 hour work week which may include but not limited to the following.
  a) social networking and contacting sponsors and other business prospects.
  b) editing video and photos.
  c) undetermined number of hunting trips that are necessary to complete the amout of TV shows needed for Antler Insanity.
    1)all expenses will be paid, but no additional money will be paid for these hunt related trips. If personal vehicle is used a rate of .50 per mile will be paid or a rate of .30 if fuel cost is provided by Antler Insanity.
  d) other task brought forth by owners of BYG Outdoors.
  c)

It is understood that I will be in charge of determining the TV series outline and show contents. That all shows will require final approval by either Kenneth Lancaster or Myself before airing on TV.

# Exhibit B



THE
VAN WINKLE
LAW FIRM

Direct Dial: 828-771-2586
Facsimile: 828-257-2773
E-mail: dcarter@vwlawfirm.com

Certified Mail, Return Receipt Requested 7009 3410 0000 475 4432
E-mail: smileyz71@aol.com and hf36@cox.net

January 23, 2013

Christopher Shane Smith
496 Witherspoon Road
Yahoo City, MS 39194

Subject:     U.S. Trademark Application Serial No. 85/623,954
             Filed: May 14, 2012 for Antler Design

Dear Mr. Smith:

We represent Antler Insanity, L.L.C., your former employer, in connection with intellectual property matters. It has come to our attention that on May 14, 2012, approximately two (2) weeks after you received your last paycheck from Antler Insanity, L.L.C., you filed U.S. Trademark Application Serial No. 85/623,954 for a logo of an antler design which is identical to the logo which has been used by Antler Insanity, L.L.C. since at least 2011.

This action by you is a violation of the Federal Lanham Act which governs trademarks and further violates our client's rights. We therefore demand that you immediately send the Trademark Office a notice of express abandonment of your '954 application and that you send me a copy of such notice. If we do not receive a copy of the notice of abandonment within two (2) weeks of the date of this letter, our client has authorized us to take appropriate legal action to protect its rights. In addition, if you begin using the antler logo in connection with any goods or services, our client will sue you for trademark infringement.

If you or your attorney has any questions, please let me know.

Very truly yours,

VAN WINKLE, BUCK, WALL
STARNES AND DAVIS, P.A.

David M. Carter

DMC/jp

Cc:     Randy Buckner

Smith 2013-01-23 (Inf) 37290-0001.doc

# Exhibit C

Subj: **Re: SHANE SMITH Reimbursement**
Date: 4/19/2012 5:09:41 A.M. Central Daylight Time
From: smileyz71@aol.com
To: jyoung@ncsurvey.com
CC: logsrus@ccvn.com, jyoung@ncsurvey.com, bucknerconstruction@yahoo.com, darrin.holt@mindspring.com

Hey Guys, I am headed out from Missouri, and on to TX to meet my Dad for a few days. Missouri went ok, I filmed Dean shoot one the first morning, and then I filmed Jason Ramsey while Kenneth hunted and Dean filmed him... Jason Missed one on film. Kenneth has had no luck so far, but is making one more hunt this morning before they head back to MS. If Kenneth can pull off a kill this morning it will complete a show. If not it will 75% complete and we can find something to fill in the gap.

 I have not gotten any feed back from anyone about my reimbursement breakdown, well besides John's. I was wondering if y'all had time to look things over and what your thoughts were on everything?

Sent from my iPad

On Apr 12, 2012, at 7:08 PM, "john young" <jyoung@ncsurvey.com> wrote:

> Quite a bombshell there. That's why I mentioned this six months ago. I may go throw up.
> John
>
> ---
>
> **From:** smileyz71@aol.com [mailto:smileyz71@aol.com]
> **Sent:** Thursday, April 12, 2012 5:36 PM
> **To:** logsrus@ccvn.com; John Young; bucknerconstruction@yahoo.com; darrin.holt@mindspring.com; smileyz71@aol.com
> **Subject:** SHANE SMITH Reimbursement
>
>  As y'all know I have not turned in a reimbursement report yet for the past trips. I have been working on it from time to time and have almost gotten everything in order. The List includes cost for the following... Hunt Cost, Tags, Food, Guide Tips, Camera supplies, Hunting Supplies, Air Travel, Hotel bookings, Truck Mileage, and other Miscellaneous expense. My report may not be as detailed as you would like, but all documentation is available and copies can be mailed to y'all. I did not take the time to type out every little detail because there were so many and I have to get those commercials finished ASAP. All hunts were paid for with a check, so copies of them are available. Mileage is brown down to each trip and or by state, tags are also state and person specific. The report starts at the 2011 Lakeland Big Buck Expo and ends April of 2012. I know there will be questions so feel free to call or email about anything. Also I know it is a large amount so I will entertain any payment Ideas y'all have, I have started my house so I do need the money so hopefully we can come to terms on everything soon. The Mississippi Mileage was only recorded on days that we recorded a kill on video, many other hunts were taken but not recorded. I have also purchased several other cameras and equipment that I used on every hunt... GoPro cameras, Sony Handy Cam, Sony DSLR Camera, Wireless Mics, Shotgun Mic, Gitzo Tripod and Head, Camera Tree Arm, Avid Meida Composer and other editing software. These Items total over **$6,800.00**, I would like to have Al become owner of all these things if that is a possibility. If Not I will have to sell some of them and make due with what I got.
>  I am working on getting the commercials finished by the first week of May, it will be tough but I think it will all come together!
>
>  Thanks Everyone, Shane
>
> **Hunt Cost:**
> TX, Kenneth/Shane - 5,000.00
> CO, Shane - 2,500.00
> CO, Kenneth - 5,800.00... 2,700.00 credit remains in Escrow
> OK, Shane - 1,400.00
> IA, Kenneth - 2,000.00
>  **Total Due: 16,700.00**

**Guide Tips:**
NM, Randy/Dean - 400.00
NM, Shane/Kenneth - 700.00
CO, Shane - 250.00
CO, Kenneth - 300.00
OK, Shane - 100.00
NE, Shane - 300.00
IA, Shane - 200.00
    **Total Due: 2,250.00**

**Tags and License**
NM, Shane/Kenneth - 1,150.00
CO, Shane - 341.00
WY, Shane/Kenneth - 100.00 .... Points purchased.
IL,  Kenneth/Shane/Chris Reed - 1,461.24
MS, Shane - 70.29
    **Total Due: 3,052.24**

**Food:**
FL Shane/Kenneth - 324.00
FL Gator Shane/Kenneth 403.39
NM Shane/Randy/Dean - 136.06
NM Shane/Kenneth/Dean - 504.59
CO Shane/Dean - 494.15
    **Total Due: 1862.70**

**Hotel:**
FL Kenneth/Shane 298.33
Shot Show - 969.56
    **Total Due: 1267.89**

**Airfare and Baggage cost and Airport Parking**
NM Shane - 496.30
FL Kenneth/Shane -798.88
Delta Air Shane -  260.00
Shot Show - 607.00
Bag Cost - 180.00
Parking Cost - 270.00
    **Total Due: 2,612.18**

**Video Supplies**
owed for partial purchase of camera from Campbell - 1,100.00
media cards, tapes, batteries, camera case, hard drive, and lights - 805.49
    **Total Due:1905.49**

**Truck Mileage @ 55cents Per Mi**
FL Shane/Kenneth 1,920 mi - 1,056.00
NC Shane 720 mi - 396.00
MS Hunting 878 mi - 482.00
MS Business 543 mi - 298.65
    **Total Due: 2,233.65**

**Truck Mileage @ 33 cents per Mi**
NE  - 1,300 mi - 429.00
OK  - 1,460 mi - 481.80
IL   - 810 mi - 267.30
KS  - 1441 mi - 475.53
IA  - 1536 mi - 506.88

TX - 1634 mi - 539.22
**Total Due: 2,708.73**

**Hunting Supplies:**
" In question "
Arrows, camo cloths, gloves, Broadheads, bullets and other general hunting supplies used during
filming - 484.60
**Total Due: 484.60**

**Misc Expenses:**
Home Depot, lots of different things used for video purposes.
**Total Due: 168.00**

**Grand Total: 35,245.48**
              **+**

B & H Photo   1,038.37

36,283.85

# Exhibit D

## David Lynch

**From:** Matt Dowd <dowd@wellsmoore.com>
**Sent:** Saturday, June 30, 2012 11:28 AM
**To:** 'David Lynch'
Al/Shane Smith
**Subject:**
**Attachments:** Scan_Doc0091.pdf; Scan_Doc0092.pdf; Scan_Doc0093.pdf; Scan_Doc0094.pdf

David,

Attached are documents put together by my client after much effort and time in sifting through the expense reimbursement requests sent by Mr. Smith. You will easily see that the issues with the reimbursement are far from simple and not nearly as cut and dried as they may have appeared when you and I first began discussing this matter. As we have discussed, much of the problems have resulted due to Mr. Smith's failure to submit these expenses in a timely manner, holding expenses for up to nearly a year, and failing to provide adequate receipts for nearly all of the expenses. As a CPA, surely you can respect Mr. Smith's obligation to provide adequate receipts and Al's right to have those receipts in order to determine the validity of those expenses.

This represents Al's position as to what reimbursements they will be willing to make in a good faith effort to resolve this matter. As I mentioned in one of my emails yesterday, some of the expenses Al is offering to pay have not been properly documented. That is, the expenses Al is offering to pay should not in anyway to be construed as an admission that Mr. Shane has fulfilled his legal obligation to provide adequate documentation of those alleged business expenses. It should also be noted that this represents Al's good faith effort to resolve all issues regarding expenses and video footage once and for all.

If you have any questions regarding the attached materials, please let me know.

Thanks.
-Matt

Matthew R. Dowd
Wells, Moore, Simmons, Edwards & Wilbanks, PLLC
Highland Bluff North
4450 Old Canton Road, Suite 200
Post Office Box 1970
Jackson, Mississippi 39215-1970
Telephone: (601) 354-5400
Telecopier: (601) 355-5850
dowd@wellsmoore.com

1



**Confidentiality Statement**

The information contained in this electronic message from the law firm of Wells, Moore, Simmons, Edwards & Wilbanks, PLLC is confidential or privileged. The information is intended to be for the use of the individual or entity named above. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this message is prohibited. If you have received this electronic message in error, please notify us immediately by telephone at (601) 354-5400.

**IRS Circular 230 Notice**

To ensure compliance with requirements imposed by the IRS, we inform you that, unless specifically indicated otherwise, any tax advice contained in this communication (including any attachments) was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code, or (ii) promoting, marketing, or recommending to another party any tax-related matter addressed herein.

2

**Legitimate expenses**
**$23,543.14**
**-$860          Unreturned trailer**
**-$331.59      Kansas tag not authorized by A.I.**
**-$50            Shot show badge for Smith friend**
**-$269.97      Can cookers**
**-$1100         Unreturned SD cards**

**$20,931.58**
**+$354.63      Credit toward camera**
---------------------
**$21,286.21**
**-$942.91      Iowa credit card charges**
**-$770          Iowa salary for Smith**
---------------------
**$19,573.30**
**This amount is payable immediately upon settlement.**

MS Business 543 mi - 298.65    (OK A.I.)
   Total Claimed: 2,233.65

**Truck Mileage @ 33 cents per Mi**
**(A mileage log has not been furnished to A.I., therefore, A.I. will need to review**
**these claims more carefully)**
NE - 1,300 mi - 429.00      (OK A.I.)
OK - 1,460 mi - 481.80      (OK A.I.)
IL   - 810 mi - 267.30       (OK A.I.)
KS - 1441 mi - 475.53      (OK A.I.)

IA - 1536 mi - 506.88
**(Iowa has been resolved with the Shane Saxton settlement. A.I. is not obligated to**
**pay this mileage as Iowa was a private hunt in accordance with the statement by**
**Shane Saxton. A.I. was not made aware that this was considered a private hunt**
**until disclosed as such by Mr Saxton. A.I. does find that they were billed $942.91**
**on the company credit card during the course of this hunt. If this was a private**
**hunt, this is a major concern.)**

TX - 1634 mi - 539.22
**(Texas expenses will be paid when a release is obtained by Mr Smith from the**
**outfitter. A.I. was assured multiple times by Mr Smith that releases were being**
**obtained from outfitters et al in regard to all video. Obtaining proper releases was**
**an integral part of his job description.)**

   **Total Claimed: 2,708.73**

**Hunting Supplies:**
" In question "
Arrows, camo cloths, gloves, Broadheads, bullets and other general hunting supplies used during filming -
484.60
**(This is vague beyond understanding. A.I. needs detailed explanation of the items purchased or**
**receipts would be ideal.)**

   **Total Claimed: 484.60**

**Misc Expenses:**
Home Depot, lots of different things used for video purposes.
**Total Claimed: 168.00 (OK, A.I.)**

B&H photo was indicated as $1038.37. A.I. has only had $746.43 of this total returned.

**Grand Total: 35,245.48**
**(This is not agreeable due to disclosure of facts above)**

**Food:**
FL Shane/Kenneth - 324.00          (OK A.I.)
FL Gator Shane/Kenneth 403.39      (OK A.I.)
NM Shane/Randy/Dean - 136.06       (OK A.I.)
NM Shane/Kenneth/Dean - 504.59     (OK A.I.)
CO Shane/Dean - 494.15             (OK A.I.)
(We continue to ask and hope for receipts as required by the IRS, we will however agree to pay
this in its entirity.)

   **Total Claimed: 1862.70**

**Hotel:**
FL Kenneth/Shane 298.33       (OK A.I.)

Shot Show - 969.56
(Expense for two other employees at the same show at the same time was $215.00 each. Mr Smith
will be reimbursed at this same rate, $215.00 as lavish or extraordinary accommodations were
never authorized. )

   **Total Claimed: 1267.89**

**Airfare and Baggage cost and Airport Parking**
NM Shane - 496.30              (OK A.I.)
FL Kenneth/Shane -798.88       (OK A.I.)

Delta Air Shane - 260.00
(A.I. does not know what this is for, reimbursement will be paid when this is resolved)

Shot Show - 607.00
(Expense for two other employees at the same show at the same time was $380.70 each. Mr Smith
will be reimbursed at this same rate, $380.70 as lavish or extraordinary travel were never
authorized. Mr Smith initially declined to go to the show. )

Bag Cost - 180.00             (OK A.I.)
Parking Cost - 270.00         (OK A.I.)

   **Total Claimed: 2,612.18**

**Video Supplies**
owed for partial purchase of camera from Campbell - 1,100.00
media cards, tapes, batteries, camera case, hard drive, and lights - 805.49
(A.I. is still awaiting the return of many video related items, as listed in a previous document.
Reimbursement will be made when we ascertain which of these items will be returned in working
order.)

   **Total Claimed:1905.49**

**Truck Mileage @ 55cents Per Mi**
FL Shane/Kenneth 1,920 mi - 1,056.00     (OK A.I.)
NC Shane 720 mi - 396.00                 (OK A.I.)

MS Hunting 878 mi - 482.00
(A.I. will pay this expense when Mr Smith signs a release to the video rights. This in no way
asserts that we do not already own the video.)

## Shane Smith list of alleged personal expenses

**Hunt Cost:**
TX, Kenneth/Shane - 5,000.00
(A.I. will reimburse this when we receive a written release and receipt from the Texas outfitter)

CO, Shane - 2,500.00          (OK A.I.)

CO, Kenneth - 5,800.00... 2,700.00 credit remains in Escrow
(A.I. obligation is $5400. The remaining $400 was for Jamie Ray tag and was a personal
negotiation by and between Shane and Mr Ray. We are not even sure who Mr Ray is.

OK, Shane - 1,400.00          (OK A.I.)
IA,  Kenneth - 2,000.00          (OK A.I.)
     Total Claimed: 16,700.00

**Guide Tips:**
NM, Randy/Dean - 400.00
NM, Shane/Kenneth - 700.00
CO, Shane - 250.00
CO, Kenneth - 300.00
(Tips above were not approved or even disclosed to A.I. .Other arrangements were made on some
of these and Mr Smith had no authorization for these)

OK, Shane - 100.00          (OK A.I.)
(A.I. has no information on this hunt. It may not be legitimate, but we agree to reimburse this as a
good faith gesture.)

NE, Shane - 300.00          (OK A.I.)
(A.I. has no information on this hunt. It may not be legitimate, but we agree to reimburse this as a
good faith gesture.)

IA, Shane - 200.00
(This was addressed as a portion of the settlement with Shane Saxton and thus does no longer
apply to A.I.)

   Total Claimed: 2,250.00

**Tags and License**
NM, Shane/Kenneth - 1,150.00  (OK A.I.)

CO, Shane - 341.00          (OK A.I.)

WY, Shane/Kenneth - 100.00 .... Points purchased.
(This was not authorized by A.I., we do agree nevertheless to reimburse $50)

IL,  Kenneth/Shane/Chris Reed - 1,461.24          (OK A.I.)

MS, Shane - 70.29          (OK A.I.)
(So far as we know, no one in the hunting industry pays for hunting license in the home state of
an employee, A.I. will however agree to pay this.)

   Total Claimed: 3,052.24

# Exhibit E



## THE LYNCH LAW FIRM

DAVID R. LYNCH, CPA, ESQ., LL.M.
T 601-321-1991  F 601-207-9017  DAVID@THELYNCHLAWFIRM.COM

September 11, 2012

Wells Moore Simmons Edwards & Wilbanks, PLLC
Attn: Mr. Matthew R. Dowd
Post Office Box 1970
Jackson, MS 39215

Re:  **Mr. Christopher "Shane" Smith & BYG Outdoors, LLC/Antler Insanity ("AI"), LLC**

Dear Matthew:

We received your email regarding reimbursement requests submitted to your client by Mr. Smith. As you have continually pointed out, I am a CPA and have been a part of numerous IRS audits, making me fully aware of what is and is not sufficient documentation of financial claims. Your assertions that Mr. Smith must produce original receipts to claim reimbursements are completely erroneous. Mr. Smith has produced extensive records including bank statements with itemized expenses, credit card statements with itemized expenses, sales history records with itemized expenses, a bill of sale, and copies of checks written by Mr. Smith. See Exhibits "B", "D", "E", "F", "G". I assist clients with audits on a regular basis and these records are sufficient to support claims that are scrutinized by the IRS and are in fact preferable over original receipts. Clearly, these are also sufficient to support Mr. Smith's claims against you for reimbursement. Your client's denial of his obligation to reimburse Mr. Smith due to lack of certain documentation is a futile delay tactic that will not be tolerated.

Please find Mr. Smith's reassertions and clarifications of said reimbursement requests below.

### HUNT COSTS

Your client claims that he is not obligated to reimburse Mr. Smith in the amount of $5,000.00 for the Texas hunt because Mr. Smith has not obtained a written release receipt from the Texas outfitter. However, Mr. Smith has received a receipt from the hunt. See Exhibit "B". It was impossible for Mr. Smith have the Texas outfitter execute a written release because AI has failed to provide Mr. Smith with an approved written release. Furthermore, as Mr. Smith is no longer employed by AI, he does not have the authority to enter into any agreements on AI's behalf. The hunt and associated costs were approved via email by an AI representative on August 22, 2011. See Exhibit "A".

Additionally, your client is denying liability in the amount of $400.00 for the Colorado hunt. This amount was also approved by AI in an email and in phone conversations with Scot Garland and John Young between September 29, 2011 and October 4, 2011. See Exhibit "C".

## GUIDE TIPS

AI has refused to reimburse Mr. Smith for the guide tips that Mr. Smith paid out of pocket on the two New Mexico and two Colorado hunts, claiming these obligations were satisfied by "other arrangements." "Other arrangements" for reimbursement of tip payments were not made known to Mr. Smith, nor has any evidence been produced by AI to show valid "other arrangements" that would release AI from liability to Mr. Smith. When paying the guide tips Mr. Smith relied on the generally accepted practice of the hunting community to tip ten percent of the hunt cost. AI approved a $1,000.00 tip on one of the New Mexico elk hunts, and Mr. Smith only paid the guide $700.00. See Exhibit "D". The turkey hunt in spring 2011 was not connected to the guide tip paid by Mr. Smith on the New Mexico elk hunt, as evidenced by the fact that the New Mexico elk hunt had its own approved tipping budget of $1,000.00. The $400.00 tip paid to Albert for the second New Mexico hunt was also approved by Randy during a discussion between Randy and Mr. Smith. See Exhibit "E."

AI claims that settlements with Shane Saxton have released AI from responsibility for various out of pocket expenses incurred by Mr. Smith. Mr. Smith was not a party to any agreements entered into by AI and Saxton and Mr. Smith has not received any reimbursements for his out of pocket expenses, including a $200.00 tip Mr. Smith paid to a guide on the Iowa hunt. AI's agreements with Saxton have no bearing on its obligations to reimburse Mr. Smith.

## TAGS AND LICENSES

Your client contends the purchase of Wyoming points for $100.00 was unauthorized, but this purchase was approved by Scot Garland and Kenneth Lancaster during a phone conversation between Garland and Mr. Smith. The purpose of this purchase was to benefit AI by building points for Kenneth Lancaster and Mr. Smith in order to draw a tag in Wyoming for a hunting trip to be filmed for AI.

## FOOD

As noted earlier, I am a CPA and have been involved in numerous IRS audits. Please inform your client that the bank and/or credit card statements showing proof of expenses are sufficient to meet the IRS requirements and in fact are preferable to the IRS over receipts. Original receipts are not necessary. Although we have provided these bank and/or credit card statements to you previously, we have attached them to this document for your convenience. See Exhibit "F".

## HOTEL

Your client claims that he is not obligated to reimburse Mr. Smith for the entire amount of his hotel expenses, totaling $969.56 because other employees, Dean and Kenneth, had lower amounts of expenses. These Dean and Kenneth had lower total costs because they were required to share a room, unlike Mr. Smith who was required to get his own room.

In fact, Mr. Smith stayed at the same hotel and had incurred the same amount of expenses at the 2012 Shot Show as he did at the 2011 Shot Show, which was approved and reimbursed by AI. Mr. Smith relied on his previous dealings with AI regarding the Shot Show to assume that accommodations at the same hotel for the same length of time would be approved by AI once again.

## AIRFARE, ETC.

AI contends that the $260.00 expense Mr. Smith incurred from Delta Air is unsubstantiated. Mr. Smith has stated that the charge was a change made to his airfare by Delta Air over which he had no control. Mr. Smith is willing to split the $260 as it was clearly an AI expense, but he understands it is slightly unclear.

Additionally, your client denies liability for the $607.00 in expenses incurred by Mr. Smith during the Shot Show because two other AI employees who attended the show incurred costs of only $380.70 each. Mr. Smith has explained that his expense is higher because his plane ticket was purchased at a later date. Furthermore, the cost was approved before Mr. Smith made the purchase during discussions between Mr. Smith, Kenneth Lancaster, Dean Davis, and others between January 7, 2012 and January 11, 2012. See Exhibit "H."

## VIDEO SUPPLIES

The following reimbursement section is entitled "Video Supplies," and your client's response contains a reference to another document wherein several "video related items" are listed. That document will be incorporated in this response to your client's contentions with the reimbursements requested in this section.

First, a Sony NP-F970 L-Series Info-Lithium Battery Pack, valued at $135.99 is being claimed as unreturned. In fact, that battery pack was sold to Shane Smith with a camera. One Mustang Flash 64GB 10 SDXC Card, valued at $219.99, was already provided by Mr. Smith to AI via Nick Fulton. Two MaxFlash 32GB High Capacity Class 6 Secure Digital Cards, valued at $99.99 each, are declared unreturned by AI. However, Mr. Smith delivered eight SD cards to my office, which will be relinquished to you upon reaching an agreement.

The GoPro HD Hero Naked, valued at $259.99, was purchased by Mr. Smith, and he actually did not seek reimbursement for this item. Please remove it from the list. If your client provides valid documentation of AI's purchase of this item, the item will be returned. The remaining items in paragraph one, the GoPro Tripod Adapter, valued at $8.00, was provided to Dean Davis or you on one of several occasions where Mr. Smith returned AI items. The Joby Gorillapod GP2 SLR Flexible Mini-tripod with bubble level, valued at $39.95, along with the

Kingston 16GB SDHC Class 4, valued at $44.99 will be relinquished to you upon reaching an agreement.

The Sony NEX Battery, valued at $79.99, will be relinquished to you upon reaching an agreement, and the five SD Cards mentioned next on the list, with a combined value of $270.00, will either be relinquished to you upon reaching an agreement or have been provided by Mr. Smith to Dean Davis or you on one of several occasions where Mr. Smith returned AI items. The Chest Waders purchased at Bass Pro, valued at $100.00, were purchased by Mr. Smith, and he intends to keep them. If your client can provide valid documentation of AI's purchase of the Chest Waders, Mr. Smith will return them. The Dynex 6-in-1 Memory Card Reader, valued at $18.99, and the 1TB Silver Mac 2.0 My Passport, valued at $109.99, have already been provided by Mr. Smith to Dean Davis or you on one of several occasions where Mr. Smith returned AI items. The Battery Bacpac, valued at $ 54.99 will be relinquished to you upon reaching an agreement. The GoPro purchased at BestBuy and valued at $310.25 was not listed as a requested reimbursement.

The B&H Photo Receipt items, including Manfrotto 585 LNC Modosteady Remote Control, valued at $35.00, the Varizoom Extension Cable 100', valued at $46.99, and Opteka 37mm 0.3x Ultra Fisheye Lens, valued at $99.95 were all purchased over 18 (eighteen) months ago and are either broken or have used to their fullest capacity and no longer have use. The Rycote 12cm/STD Softie Front, valued at $110.00 will accompany this letter. Mr. Smith does not have possession of the $1,100.00 of SD cards for which AI reimbursed Nick Fulton. Nick Fulton and Mr. Smith exchanged cards at various points in time, but as far as Mr. Smith is aware, he no longer has any of the cards. Therefore, Mr. Smith is unable to deliver them to your client.

## MILEAGE

Your client claims again that the "settlement with Shane Saxton" excuses reimbursement to Mr. Smith regarding the Iowa mileage reimbursement for 1536 miles, a total of $506.88. As indicated previously, whatever occurred between AI and Shane Saxton did not foreclose Mr. Smith from receiving his reimbursements. Moreover, your client has also claimed that Shane Saxton made a statement designating the Iowa Hunt as a private hunt. However, this argument has no merit because the Iowa Hunt was scheduled by your client as a business hunt and approved on the 2011 Hunt Breakdown in August 2010. See Exhibit "A." Your client also asserts that $942.91 was billed to the company credit card during the course of the Iowa Hunt. Mr. Smith has acknowledged that the company credit card was used on this company hunt for approved items such as food, gas, and hunting tags.

Your client states that the Texas Hunt expenses amounting to $539.22 for 1634 miles will be paid "when a release is obtained by Mr. Smith from the outfitter." Mr. Smith's position on this issue was first discussed in the second full paragraph on page one of this letter. To reiterate, Mr. Smith has received a receipt from the hunt. See Exhibit "B". It was impossible for Mr. Smith have the Texas outfitter execute a written release because AI has failed to provide Mr. Smith with an approved written release. Furthermore, as Mr. Smith is no longer employed by AI, he

does not have the authority to enter into any agreements on AI's behalf. The hunt and associated costs were approved via email by an AI representative on August 22, 2011. See Exhibit "A".

## HUNTING SUPPLIES

Your client refuses to reimburse Mr. Smith for the $484.60 he spent on hunting supplies, claiming *such items as* "vague beyond understanding," despite the fact that certain "hunting supplies" are a requirement to complete the tasks given by your client to Mr. Smith. Mr. Smith has provided further descriptions of the items to clarify any vagueness. For example, arrows (to be shot from a bow), camouflage clothing and gloves (to avoid being seen in the woods by a wild animal; some bearing the logos of potential AI sponsors, such as Scent Blocker and Bone Collector), Broadheads (the sharp point attached to the end of an arrow), bullets (typically discharged from firearms, including but not limited to rifles, shotguns, and muzzleloaders). "Other general hunting supplies used during filming" includes glue for arrow repair, tape to *place tags* on harvested animals, graphite lubrication for use on moving parts of camera equipment, etc. All items were used during the filming of hunts, and items that were not fully consumed during hunts were returned by Mr. Smith to AI, namely the clothing and gloves.

## MISCELLANEOUS

Your client subtracted $331.59 from the total agreed upon expenses for a Kansas tag. Mr. Smith purchased that tag in accordance with his obligation to AI to purchase tags for upcoming hunts. When Mr. Smith purchased the tag the deadline was fast approaching, and he wanted to make sure the purchase was made in time. It was purchased for the sole benefit of AI, and Mr. Smith expects reimbursement.

Mr. Smith agrees with the next subtracted item, the $50.00 Shot Show badge for "Smith friend." Please remove it from your calculations of reimbursements.

Please reapply the $942.91 Iowa credit card charges (of which Mr. Smith has no knowledge as that description is grossly vague) and $770.00 Iowa salary to the total agreed upon expenses. As stated above whatever agreements were made between Shane Saxton and AI have no bearing on Mr. Smith's right to be reimbursed for AI expenses.

Additionally, Mr. Smith has agreed to purchase the trailer for $835.00, not $860.00, as that is what is on the bill of sale issued by Buckner Trailer Sales. See Exhibit "G". If $835.00 is not agreeable, then your client may make suggestions for arrangements to obtain possession of the trailer. Three "can cookers" are mentioned on the list of items, and Mr. Smith has possession of one "can cooker". Your client instructed Mr. Smith to deliver two "can cookers" to landowners or other individuals who had given your client favors, such as free or discounted hunts. Your client told Mr. Smith to keep the third "can cooker" for himself to use while filming for your client's television show. The two "can cookers" were given to the landowners and the third "can cooker" is currently in my office and will be relinquished to you upon reaching an agreement.

Thank you very much for your time and attention to this matter. Should you have any questions, please do not hesitate to contact me at (601) 321-1991.

Sincerely,

THE LYNCH LAW FIRM, PLLC

David R. Lynch

DRL:lg
Enclosures
cc: Christopher "Shane" Smith