IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

SHANE SMITH                                              PLAINTIFF

VS.                          CIVIL ACTION NO: 3:13-cv-841-DCB-MTP

ANTLER INSANITY, LLC; BYG OUTDOORS, LLC;
JOHN YOUNG; SCOT GARLAND;
RANDY BUCKNER; and DARRIN HOLT                           DEFENDANTS

ORDER GRANTING IN PART AND
DENYING IN PART MOTION TO DISMISS

This matter is before the Court on Defendants', Antler
Insanity, LLC, BYG Outdoors, LLC, John Young, Scot Garland, Randy
Buckner, and Darrin Holt, Motion to Dismiss **[docket entry no. 39].**
Having carefully considered the motion and responses, applicable
statutory and case law, and being otherwise fully informed in the
premises, the Court finds as follows:

I. Factual and Procedural Background

The Plaintiff Shane Smith initiated this action in the Circuit
Court of Yazoo County, Mississippi, on May 31, 2013. The Defendants
removed it to this Court, claiming diversity jurisdiction, on June
24, 2013. Notice Removal, ECF No. 1. Smith filed his amended
complaint on May 1, 2014. Am. Compl., ECF No. 37. In it he puts
forth five causes of action against the defendants: (1) breach of
contract, (2) negligent and/or intentional infliction of emotional
distress, (3) defamation, (4) tortious interference with business

1

relations, and (5) violations of the Lanham Act. Am. Compl. ¶¶ 40-44.

The dispute arises from the termination of Smith's contractual relationship with Antler Insanity, LLC, ("Antler Insanity") and BYG Outdoors, LLC, (collectively, the "corporate defendants") and some unreimbursed expenses from before his termination. Smith began working for the corporate defendants in May of 2011. Am. Compl. ¶ 11. The corporate defendants terminated Smith's employment on April 30, 2012. Am. Compl. ¶ 20. Smith had previously submitted an "expense reimbursement report" on April 7, 2012. Am. Compl. ¶ 19. After his termination, the corporate defendants sent Smith a letter "partially approving [his] reimbursement request, but denying part of the reimbursement until additional documentation could be provided by [Smith]." Am. Compl. ¶ 21. Smith submitted "additional documentation to [the corporate] Defendants or provided explanation as to why such documentation was not necessary" in a letter dated September 11, 2012. Am. Compl. ¶ 22. Smith further alleges that, even up to the date of filing this suit, the corporate defendants and John Young, Scot Garland, Randy Buckner, and Darrin Holt (collectively, the "individual defendants") have "sought to intentionally disparage [Smith] to others in the outdoor television industry" and harm his future employment prospects. Am. Compl. ¶¶ 33-34. Lastly, Smith alleges that he created a "specific graphic logo, which he registered with the United States Patent and

2

Trademark Office" ("PTO"), and the corporate defendants and individual defendants continue to use the mark in their business. Am. Compl. ¶¶ 36-38. Antler Insanity has filed a counterclaim against Smith alleging fraudulent registration of the logo by Smith, a right to register the logo itself, and common law unfair competition created by Smith's allegedly fraudulent registration. Answer & Countercl. p. 12-14, ECF No. 38.

II. Analysis

The individual defendants have moved to have the case against them dismissed for lack of personal jurisdiction through Federal Rule of Civil Procedure 12(b)(2). Both the corporate and individual defendants have moved to dismiss the case for failure to state a claim through Rule 12(b)(6).[1]

A. Personal Jurisdiction Over the Individual Defendants

"A federal court sitting in diversity may exercise personal jurisdiction only to the extent permitted a state court under state law." Paz v. Brush Engineered Materials, Inc., 445 F.3d 809, 812 (5th Cir. 2006). The Mississippi Supreme Court has ruled that "[t]he proper order when analyzing personal jurisdiction over nonresident defendants is to first consider whether the long-arm statute subjects a nonresident defendant to personal jurisdiction and then to consider whether the statute's application to that

---

[1] All references in this opinion are to the Federal Rules of Civil Procedure unless otherwise noted.

3

defendant offends the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution." Estate of Jones v. Phillips ex rel. Phillips, 992 So. 2d 1131, 1137 (Miss. 2008). Mississippi's long-arm statute provides the courts shall have jurisdiction over a nonresident who: (1) "make[s] a contract with a resident of this state to be performed in whole or in part by any party in this state," (2) "commit[s] a tort in whole or in part in this state against a resident or nonresident", or (3) "do[es] any business or perform[s] any character of work or service in this state." Miss. Code Ann. § 13-3-57 (1991).

The individual defendants are not residents of Mississippi. Further, Smith concedes that the individual defendants are not subject to jurisdiction under either the contract or business prongs of the long-arm statute. Mem. Opp. p. 4, ECF No. 45. ("Plaintiff Shane Smith does not allege that the non-resident individual Defendants are subject to personal jurisdiction under the first or third prongs of the Mississippi long-arm statute.") Therefore, the Court will only analyze whether the individual defendants meet the tort prong of the statute.

When "personal jurisdiction is predicated on the commission of a tort: 'The jurisdictional question involves some of the same issues as the merits of the case, and the plaintiff must make a prima facie case on the merits to withstand a motion to dismiss under Rule 12(b)(2).'" Unified Brands, Inc. v. Teders, 868 F. Supp.

2d 572, 577-78 (S.D. Miss. 2012) (quoting <u>Wyatt v. Kaplan</u>, 686 F.2d 276, 280 (5th Cir. 1982)). The plaintiff must not only show "that a tort has occurred. . . . [The plaintiff] must also make a prima facie showing that the tort occurred within [Mississippi]." <u>Wyatt</u>, 686 F.2d at 280. Mississippi courts "do[] not require that the action giving rise to the tort actually occur in Mississippi in order for a tort to be committed in state." <u>Yatham v. Young</u>, 912 So. 2d 467, 470 (Miss. 2005). Further, "a tort is committed in Mississippi when the injury results in this State. This is true because an injury is necessary to complete a tort." <u>Id.</u> As the individual defendants correctly state in their brief, the Fifth Circuit has "been careful to distinguish actual injury from its resultant consequences." <u>Allred v. Moore & Peterson</u>, 117 F.3d 278, 282 (5th Cir. 1997); <u>see also</u> Reply p. 2, ECF No. 46. And the "consequences stemming from the actual tort injury do not confer personal jurisdiction at the site or sites where such consequences happen to occur." <u>Jobe v. ATR Marketing, Inc.</u>, 87 F.3d 751, 753 (5th Cir. 1996). However, the result is different when the damages are an element of the tort.

Smith alleges tortious interference with his business by the individual defendants. Smith alleges that he suffered "financial detriment" because of the individual defendants' efforts "to prevent [him] from being able to procure employment with competitors of the Defendant." <u>See</u> Am. Compl. ¶¶ 34-35. A court in

this district has previously addressed the application of Mississippi's long-arm statute to this tort:

> It is without question that Mississippi recognizes the claim of tortious interference with a business relationship, which "occurs when a person unlawfully diverts prospective customers away from one's business." *Par Indus., Inc. v. Target Container Co.*, 708 So. 2d 44, 48 (Miss. 1996) . . . The elements necessary to prove such claim are: "(1) the acts were intentional and willful; (2) the acts were calculated to cause damage to the plaintiffs in their lawful business; (3) the acts were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss resulted." *MBF Corp. v. Century Bus. Commc'ns, Inc.*, 663 So. 2d 595, 598 (Miss. 1995) (alterations in original).
> The Court finds the allegations in the Amended Complaint are sufficient to establish a prima facie showing that the tortious interference claim was committed, at least in part, in Mississippi because this is the state in which the alleged damage and loss occurred. *See Allred v. Moore & Peterson*, 117 F.3d 278, 282 (5th Cir. 1997) (explaining that "[u]nder the tort prong of the Mississippi long-arm statute, personal jurisdiction is proper if any element of the tort (or any part of any element) takes place in Mississippi.") . . . [T]he Court finds that the loss and damage suffered by [the plaintiff] in this case are not mere consequences of a tort having occurred elsewhere.

Unified Brands, 868 F. Supp. 2d at 578-79. Judge Barbour in the Unified Brands case also found that the lost business "necessarily occur[red] in Mississippi as the principal place of business for [the plaintiff]." Id., at 579. This Court makes the same inference as to the damages alleged by Smith because he is a resident of Mississippi. Therefore, the Court finds that the long-arm statute applies to the individual defendants.

The Court next considers whether the "assertion of

jurisdiction [over the individual defendants] under the long-arm statute offends the Due Process Clause of the Fourteenth Amendment." Estate of Jones, 992 So. 2d at 1139. Due process allows jurisdiction over a nonresident defendant when: "(1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with the forum state, and (2) the exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice." Alpine View Co. Ltd. v. Atlas Copco AB, 205 F.3d 208, 215 (5th Cir. 2000). "Minimum contacts can be established either through contact sufficient to assert specific jurisdiction, or contacts sufficient to assert general jurisdiction." Id. Here, Smith does not allege contacts sufficient to subject the individual defendants to general jurisdiction, so the Court will only analyze those facts supporting specific jurisdiction. See Mem. Opp. p. 4, ECF No. 45 ("Smith does not allege that the individual Defendants are subject to general personal jurisdiction. . . .").

Specific personal jurisdiction "exists when a nonresident defendant has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." Panda Brandywine Corp. v. Potomac Elec. Power Co., 253 F.3d 865, 868 (5th Cir. 2001) (internal quotations omitted). The individual defendants argue that they cannot be subject to jurisdiction because they are not parties

7

to the alleged employment agreement. See Mem. Supp. p. 8, ECF No. 40. However, the Supreme Court has "reject[ed] the suggestion that employees who act in their official capacity are somehow shielded from suit in their individual capacity. But jurisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him." Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 781 n.13 (1984) (citing Calder v. Jones, 465 U.S. 783, 790 (1984)). Each of the individual defendants admits he is "a member of Antler Insanity, LLC" in his declaration attached to the motion to dismiss. See Mot. Dismiss Exs. 1-4 ¶ 4, ECF No. 39-1 through 39-4. Therefore, although the individual defendants were not parties to the contract with Smith, their actions in their official capacity can confer jurisdiction over them to this Court. Further, "[e]ach defendant's contacts with the forum State must be assessed individually." Calder, 465 U.S. at 790.

Judge Barbour also examined whether the due process clause permits specific jurisdiction:

> Courts have found that a single act that is directed at the forum may be sufficient to confer specific jurisdiction if the act gives rise to the plaintiff's cause of action. *See e.g. Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 419 (5th Cir. 1993). Further, under *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L. Ed. 2d 804 (1984), the exercise of specific jurisdiction may be proper in cases in which a defendant engages in intentional conduct that is calculated to cause injury in the forum state. In this Circuit, the analysis of *Calder*'s 'effects' test, as applied to tortious interference claims, requires a determination of "whether the alleged tortfeasor expressly aimed his out-of-state conduct at the forum state by examining the

nexus between the forum and the injured contractual relationships." *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 402 (5th Cir. 2009).

Unified Brands, 868 F. Supp. 2d at 580. "Under *Calder*, 'an act done outside the state that has consequences or effects within the state will suffice as a basis for jurisdiction in a suit arising from those consequences if the effects are seriously harmful and were intended or highly likely to follow from the nonresident defendant's conduct.'" Mullins, 564 F.3d at 400 (quoting Guidry v. U.S. Tobacco Co., 188 F.3d 619, 628 (5th Cir. 1999)). "The key to *Calder* is that the effects of an alleged intentional tort are to be assessed as *part* of the analysis of the defendant's relevant contacts with the forum." Panda Brandywine, 253 F.3d at 869. Further, "the plaintiff's residence in the forum, and suffering of harm there, will not alone support jurisdiction under *Calder*." Revell v. Lidov, 317 F. 3d 467, 473 (5th Cir. 2002).

The nexus here is the employment and professional relationship between Smith and Antler Insanity. However, the Court is unable to determine how the individual defendants satisfy this nexus because Smith alleges "nothing in the First Amended Complaint that ascribes specific conduct or statements to [the individual defendants] . . . . [I]t is not enough to simply rest on the use of the collective term, 'Defendants,' in the allegations." Gen. Retail Servs., Inc. v. Wirelss Toyz Franchise, LLC, 255 F. App'x 775, 793 (5th Cir. 2007) (citing Rush v. Savchuk, 444 U.S. 320, 332-33 (1980)). Smith

9

has alleged no facts that support the individual defendants'
involvement in his tort claims. The individual defendants are
identified in the beginning of Smith's amended complaint and never
again mentioned. Thus, the Court finds that Smith has failed to
meet his burden to show sufficient minimum contacts "that these
individuals could reasonably expect to hailed into court" in
Mississippi. Id. Therefore the individual defendants' motion to
dismiss for lack of personal jurisdiction will be granted, and they
will be dismissed from this case. Because the Court has found
insufficient minimum contacts between the individual defendants and
Mississippi, it does not reach the issue of whether jurisdiction
over them would violate traditional notions of fair play and
substantial justice.

### B. Failure to State a Claim

The corporate defendants submit two arguments in support of
their position that Smith has failed to state a claim: (1) Smith
has failed to meet the plausibility burden of Rule 8(a) and (2) his
claims are time-barred by Mississippi Code Annotated ("MCA")
Sections 15-1-29 and 15-1-35.

### 1. Rule 8(a) Plausibility

Rule 8(a) requires a plaintiff to plead a "short and plain
statement" of his claim. Fed. R. Civ. P. 8(a)(2). The Supreme Court
has raised the plaintiff's burden by holding this short and plain
statement to a plausibility standard. In ruling on a motion to

10

dismiss, "[t]he court's task is to determine whether the plaintiff has stated a legally cognizable claim that is plausible. . . ." Lone Star Fund V (U.S.), L.P. v. Barclays Bank, PLC, 594 F.3d 383, 387 (5th Cir. 2010) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). Determining plausibility is a "context-specific task" requiring the application of "judicial experience and common sense." Id., at 679. But "[a] complaint must fail if it offers only 'naked assertions devoid of further factual enhancement.'" Doe v. Robertson, 751 F.3d 383, 387 (5th Cir. 2014) (quoting Iqbal, 556 U.S. at 678)). Ruling on a motion to dismiss, courts "make all inferences in a manner favorable to the plaintiff, 'but plaintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim.'" Wilson v. Birnberg, 667 F.3d 591, 595 (5th Cir. 2012) (quoting City of Clinton v. Pilgrim's Pride Corp., 632 F.3d 148, 152-53 (5th Cir. 2010)).

In a claim for breach of contract in Mississippi, a plaintiff must plead: (1) the existence of a valid contract and (2) breach by the defendant. Bus. Commc'ns, Inc. v. Banks, 90 So. 3d 1221, 1224-25 (Miss. 2012). Smith has pled the existence of a valid contract and that, as part of that contract, the corporate defendants would

pay all of Smith's work expenses. Am. Compl. ¶¶ 13, 18. Further, Smith has pled that the corporate defendants breached the contract by refusing to pay his submitted expenses. Am. Compl. ¶¶ 21, 24-25. Therefore, the Court finds that Smith's breach of contract claim meets the burden of Rule 8.

In a claim for trademark infringement under the Lanham Act, the plaintiff must show: (1) "ownership in a legally protectible mark" and (2) "infringement by demonstrating a likelihood of confusion." Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co., 550 F.3d 465, 474 (5th Cir. 2008); Wilson v. New Palace Casino, LLC, No. 1:11cv447, 2013 WL 870350, at *9 (S.D. Miss. Mar. 2013). As to the first element, "proof of the registration of a mark with the PTO constitutes prima facie evidence that the mark is valid and the registrant has the exclusive right to use the registered mark in commerce. . . ." Amazing Spaces, Inc. v. Metro Mini Storage, 608 F.3d 225, 237 (5th Cir. 2010) (citing Lanham Act §§ 7(b) & 33(a)). Further, "[a] certificate of registration of a mark . . . shall be prima facie evidence . . . of the owner's ownership of the mark. . . ." 15 U.S.C. § 1057(b) (2010); see also 15 U.S.C. § 1115(a) (2002). The Court finds that Smith has sufficiently pled his ownership of the mark to survive a motion to dismiss by submitting a copy of his certificate of registration of the mark with the PTO. See Am. Compl. Ex. F p. 1, ECF No. 37-6. As to the second element,

"[l]ikelihood of confusion is synonymous with a probability of confusion, which is more than a mere possibility of confusion." Elvis Presley Enterprises, Inc. v. Capece, 141 F.3d 188, 193 (5th Cir. 1998). A court considers the following "digits of confusion" to determine whether a likelihood of confusion exists: (1) the type of mark involved, (2) similarity of the marks, (3) similarity of the products or services, (4) identity of the retail outlets and purchasers, (5) identity of the advertising media used, (6) defendant's intent, and (7) actual confusion.  Id., at 194. This list is nonexhaustive, and a court may consider any other factor it deems relevant. Id. The Court finds that a likelihood of confusion has been sufficiently pled because the marks are identical and Antler Insanity is countersuing over ownership of the logo. Therefore, Smith has sufficiently pleaded this claim to survive a motion to dismiss.

As to the remaining tort claims there appears to be scant evidence to support the viability of these claims; however, the Court will deny the motion to dismiss for failure to state a claim at this stage in anticipation of careful review after discovery and at the summary judgment stage. The Court outlines infra the necessary elements of each claim that Smith must prove.

In a claim for intentional infliction of emotional distress the plaintiff is required to show:

> 1. The defendant acted willfully towards the plaintiff by committing certain described actions;

2. The defendant's acts are ones which evoke outrage or
revulsion in civilized society;
3. The acts were directed at or intended to cause harm to
the plaintiff;
4. The plaintiff suffered severe emotional distress as a
direct result of the acts of the defendant; and
5. Such resulting emotional distress was foreseeable from
the intentional acts of the defendant.

Rainer v. Wal-Mart Assocs., Inc., 119 So. 3d 398, 403-04 (Miss. Ct.

App. 2013) (internal quotations omitted). The requirements imposed

on a claim for negligent infliction of emotional distress are less

straightforward.

A strong argument can be made that Mississippi has
historically lacked a consistent emotional distress
jurisprudence in cases of simple negligence and that it
does not have one now . . . There is more than ample
Mississippi authority supporting either a broad or narrow
application of the right to recover emotional distress
damages in various contexts, and this has enabled courts
to selectively cite from abundant authority in support of
whatever result they deem appropriate in a particular
case.

Mississippi Law of Torts, § 20:6 Negligent Infliction of Emotional

Distress (2d ed. 2013). There are two leading lines of Mississippi

Supreme Court precedent that judges may choose from.

In one line of cases, the Court follows the majority view
that, where the defendant's conduct rises only to the
level of simple negligence, the plaintiff must prove some
sort of physical manifestation of distress and/or
demonstrable injury, either physical or mental, and that
such injury must have been reasonably foreseeable to the
defendant. In another line of cases, the Supreme Court
has indicated an intent to "relax" the standard of proof
in emotional distress cases and follow the minority view
that a plaintiff may recover for emotional distress and
mental anguish proximately resulting from ordinary
negligence, provided only that the injury was reasonably
foreseeable to the defendant.

Id. However, the authors of Mississippi Law of Torts assert that the most recent cases augur a "firm shift" to the more stringent standard requiring proof of demonstrable, physical harm. Id.; accord Montgomery v. CitiMortgage, Inc., 955 F. Supp. 2d 640, 653 (S.D. Miss. 2013) (finding the demonstrable harm standard "has been more consistently applied by the federal district courts in Mississippi and the Mississippi Supreme Court" and collecting cases). Because Smith's amended complaint does not plead some direct physical injury caused by the negligent conduct of the defendants, he may recover only in either "a claim of outrageous conduct" or where there is a medically cognizable and treatable "resulting physical illness or assault upon the mind, personality or nervous system of the plaintiff." Paz v. Brush Eng'red Materials, Inc., 949 So. 2d 1, 4 (Miss. 2007) (internal quotations omitted). Further, this harm must have been reasonably foreseeable from the actions of the defendant. Id. (citing Leaf River Forest Products, Inc. v. Ferguson, 662 So. 2d 648, 658 (Miss. 1995)).

The corporate defendants argue that Mississippi law does not recognize a claim for negligent infliction of emotional distress based on defamation. Mem. Supp. p. 14 n.1, ECF No. 40. They cite to authority from the Northern District of Mississippi stating that such a cause of action cannot lie. See Lane v. Strang Commc'ns Co., 297 F. Supp. 2d 897, 899 n.1 (N.D. Miss. 2003) (citing Mitchell v. Random House, Inc., 865 F.2d 664 (5th Cir. 1989)). Some authority

for the same proposition exists in this district. See e.g., Hayne v. The Innocence Project, No. 3:09cv218, 2011 WL 198128, at *11 (S.D. Miss. Jan. 20, 2011) (citing to Lane) ("Mississippi law does not recognize a cause of action for negligent infliction of emotional distress arising from a defamation claim."); Pierce v. The Clarion Ledger ("Pierce I"), 433 F. Supp. 2d 754, 760 (S.D. Miss. 2006) (citing to Lane) (". . . [N]o cause of action exists under Mississippi law for negligent infliction of emotional distress arising from non-commercial speech."). However, the 5th Circuit precedent relied on by the Lane court only holds that Mississippi precedents do not support such a claim based on a "written noncommercial publication." Mitchell, 865 F.2d at 672; see also Pierce v. The Clarion-Ledger ("Pierce II"), 236 F. App'x 887, 889 (5th Cir. 2007) (reiterating the rule for "written noncommercial publications"). Further, the Mississippi Court of Appeals has more recently implied in dicta that a "claim for negligent infliction based upon defamation" may exist but "would obviously require a successful claim of defamation." Hudson v. Palmer, 977 So. 2d 369, 384-85 (Miss. Ct. App. 2007) (finding it unnecessary to formally recognize such a cause of action in that case and citing to Lane and Pierce I), cert. denied 977 So. 2d 343 (Miss. 2008); see also Lehman v. Holleman, No. 1:11cv284, 2012 WL 3915392, at *3 (S.D. Miss. Sep. 10, 2012) (citing to Hudson but stating that such a claim has not previously been recognized).

16

Because the Hudson decision came out of the Mississippi Court of Appeals, rather than the Mississippi Supreme Court, this Court is not bound to follow it in this diversity case. Labiche v. Legal Sec. Ins. Co., 31 F.3d 350, 351 (5th Cir. 1994) ("When there is no ruling by the state's highest court, it is the duty of the federal court to determine as best it can, what the highest court of the state would decide."). However, based on these precedents, the facts of this case, and the Court's Rule 8 ruling supra, the Court is unwilling to apply the extended Mitchell rule in this case, at this time.

> In a claim for defamation, the plaintiff must show:
>
> (1) a false and defamatory statement concerning [the] plaintiff;
> (2) unprivileged publication to [a] third party;
> (3) fault amounting at least to negligence on [the] part of [the] publisher;
> (4) and either actionability of [the] statement irrespective of special harm or [the] existence of special harm caused by publication.

Franklin v. Thompson, 722 So. 2d 688, 692 (Miss. 1998).

In a claim for tortious interference with business relations, the plaintiff must plead: (1) intentional and willful acts by the defendant; (2) that the acts were intended to damage the plaintiff's business; (3) that the acts were unlawful; and (4) actual damages caused by the defendant's unlawful acts. MBF Corp. v. Century Bus. Commc'ns, Inc., 663 So. 2d 595, 598 (Miss. 1995).

## 2. Statute of Limitations

The corporate defendants lastly argue that Smith's tort and

17

contract claims are time-barred. The Court will first analyze the statute of limitations for Smith's contract claim, followed by the statute of limitations for his tort claims.

### A. Contract Claim

The corporate defendants assert that the breach of contract claim is barred by MCA Section 15-1-29. MCA Section 15-1-29 provides a one-year statute of limitations for unwritten employment contracts from when the cause of action accrues. Miss. Code Ann. §15-1-29 (1976). Smith argues that the longer three-year statute of limitations for a written contract from MCA Section 15-1-49 should apply. Antler Insanity contests the existence of a written contract, and Smith has heretofore been unable to produce the written agreement. However, the Court finds it unnecessary to determine which statute of limitations should apply because Smith's claims are not time-barred under either.

In a breach of contract claim, the cause of action accrues at the time of the breach. Young v. S. Farm Bureau Life Ins. Co., 592 So. 2d 103, 107 (Miss. 1991) (quoting Johnson v. Crisler, 156 Miss. 266, 269 (1930)). The corporate defendants contend that Smith's cause of action accrued no later than April 30, 2012, the date his employment was terminated. Reply p. 4, ECF No. 46. Smith argues, however, that his cause of action accrued sometime after September 11, 2012, the date he sent a letter to the corporate defendants elaborating upon his request for reimbursement. Mem. Opp. p. 11,

ECF No. 45. "[A] breach of contract is a failure, without legal excuse, to perform any promise that forms the whole or part of a contract." 23 Williston on Contracts § 63:1 (4th ed. 2014).

Smith submitted his reimbursement report three weeks before his termination, therefore, the contract was not breached before then and his reimbursement was still pending at that time. The corporate defendants have not explicitly argued and cite to no authority that termination should be construed as a denial of Smith's claims for reimbursement. Further, Smith attached to his amended complaint an email sent from a party representing Antler Insanity discussing Smith's reimbursement report. The email is dated June 30, 2012, one month after his termination. See Am. Compl. Ex. D, ECF No. 37-4. In the email, Antler Insanity, through its agent, states that the email and its attachments "represent[ Antler Insanity]'s position as to what reimbursement they will be willing to make in a good faith effort to resolve this matter." Id. This clearly shows that Antler Insanity had not refused to pay Smith's expenses before then. It reads to the contrary, in fact: Antler Insanity was agreeing to pay some of Smith's claimed expenses. Based on this correspondence and without finding a specific date on which the contract was breached, the Court finds that it could not have been breached before June 30, 2012. Smith filed the case at bar on May 31, 2012. Therefore, Smith's breach of contract claim is not time-barred.

B. Tort Claims

The corporate defendants assert that Smith's tort claims are barred by MCA Section 15-1-35. The statute provides:

> All actions for assault, assault and battery, maiming, false imprisonment, malicious arrest, or menace, and all actions for slanderous words concerning the person or title, for failure to employ, and for libels, shall be commenced within one (1) year next after the cause of such action accrued, and not after.

Miss. Code Ann. § 15-1-35. While the statute facially applies to Smith's defamation action, the Mississippi Supreme Court has interpreted this statute to apply to claims of intentional infliction of emotional distress, as well. Jones v. Fluor Daniel Servs. Corp., 32 So. 3d 417, 422-23 (Miss. 2010). The corporate defendants argue it applies also to the claims for tortious interference with business relations and negligent infliction of emotional distress "[b]ecause the allegations underlying those claims 'may be fairly categorized as one of the enumerated torts [defamation], the one-year statute applies.'" Mem. Supp. p. 13-14, ECF No. 40 (quoting Jones, 32 So. 3d at 423). The corporate defendants assert that these two claims "arise[] solely from the alleged defamation." Mem. Supp. p. 13. However, the Mississippi courts have previously held that the three-year "catch all" statute of limitations from MCA Section 15-1-49 applies to claims of negligent infliction of emotional distress. Air Comfort Sys., Inc. v. Honeywell, Inc., 760 So. 2d 43, 47 (Miss. Ct. App. 2000) (citing Norman v. Bucklew, 684 So. 2d 1246, 1256 (Miss. 1996); City of

20

Mound Bayou v. Johnson, 562 So. 2d 1212, 1217 (Miss. 1990)). Furthermore, the three-year "catch all" statute also applies to claims of tortious interference with business relations. Nichols v. Tri-State Brick & Tile Co., Inc., 608 So. 2d 324, 333 (Miss. 1992) ("[Tortious interference with business relations], however, simply does not fit with any of the enumerated torts in [MCA 15-1-35]."). The Court finds that the claims for negligent infliction of emotional distress and tortious interference with business relations are clearly not time-barred; the facts, however, must be more closely examined to determine whether the claims for defamation and intentional infliction of emotional distress are time-barred.

Smith asserts that these tort claims are not time-barred because the "tortious actions took place at different times, months after [his] April 30, 2012, termination." He also quibbles with the cases cited by the defendants arguing that his "case is distinguishable because [he] did not suffer [the tort damages] on the date of his termination but instead suffered these damages at the hands of the individual Defendants months later." Mem. Opp. p 11-12, ECF No. 45. The Court will apply the same reasoning in reaching its ruling on the Rule 8 issues supra to the issue of whether these two claims are time-barred: the Court will deny the motion to dismiss on this issue in anticipation of careful review after discovery and at the summary judgment stage.

### III. Conclusion

Based on the foregoing analysis, the Court finds that the individual defendants, John Young, Scot Garland, Randy Buckner, and Darrin Holt, should be dismissed from this action for a lack of personal jurisdiction. The Court further finds that the plaintiff's, Shane Smith, claims for negligent and/or intentional infliction of emotional distress, defamation, tortious interference with business relations, breach of contract and trademark infringement have been sufficiently pled. The Court lastly finds that Smith's breach of contract claim and tort claims are not time-barred.

### IV. Order

IT IS HEREBY ORDERED that the Defendants', John Young, Scot Garland, Randy Buckner, and Darrin Holt, Motion to Dismiss for Lack of Personal Jurisdiction is GRANTED.

FURTHER ORDERED that the Defendants John Young, Scot Garland, Randy Buckner, and Darrin Holt are dismissed from this action.

FURTHER ORDERED that the Defendants', Antler Insanity, LLC, and BYG Outdoors, LLC, Motion to Dismiss for Failure to State a Claim is DENIED.

SO ORDERED this the 27th day of October 2014.

<u>  /s/ David Bramlette        </u>
UNITED STATES DISTRICT JUDGE